## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:                                                    Case No.22-18729-RAM

SANIBEL REALTY TRUST LLC,                                 Chapter 11

                    Debtor.

_____/


## U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GSAA HOME EQUITY
## TRUST 2006-5, ASSET-BACKED CERTIFICATES, SERIES 2006-5'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY
## (Re: 9595 Collins Ave, PH-6, Surfside, Florida 33154)

U.S. Bank National Association, as Trustee for GSAA Home Equity Trust 2006-5, Asset-Backed Certificates, Series 2006-5 ("Movant") or ("Creditor"), by and through undersigned counsel, files this Motion for Relief from the Automatic Stay, and in support states as follows:

### I.    JURISDICTION

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. Further, review is appropriate under 11 U.S.C. §§ 105(a), 362 and other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

### II.    STATEMENT OF FACTS

**A.    LOAN HISTORY**

1.    On or about November 30, 2005, Dominic J. Abreu ("Borrower") executed a promissory note in the principal sum of $492,000.00 (the "Note"). The Note reflects it was indorsed in blank. The Note is secured by a recorded Mortgage executed by Dominic J. Abreu and Dolores Abreu (the "Mortgage") on the real property located at 9595 Collins Ave, PH-6, Surfside, Florida 33154 (the "Property"), which is more fully described in the Mortgage, which is recorded in the Public Records of Miami-Dade County, Florida in Book 24049 at Page 1790. Said Mortgage secures a Note in the amount of $492,000.00. True and correct copies of the relevant loan documents are attached as Composite Exhibit "A."

2.    The aforementioned mortgage gives Movant a 1st mortgage position on the property

legally described as:

> CONDOMINIUM UNIT NO. N PH-F, IN THE NORTH
> BUILDING, IN SOLIMAR CONDOMINIUM, ACCORDING TO
> THE DECLARATION THEREOF, RECORDED JUNE 13, 2001,
> IN OFFICIAL RECORDS BOOK 19719, AT PAGE 307, OF THE
> PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA
> AN AMENDMENT TO THE DECLARATION OF
> CONDOMINIUM OF SOLIMAR CONDOMINIUM,
> RECORDED JANUARY 8, 2002, IN OFFICIAL RECORDS
> BOOK 20130, AT PAGE 185, OF THE PUBLIC RECORDS OF
> MIAMI-DADE COUNTY, FLORIDA AS AMENDED AND/OR
> SUPPLEMENTED FROM TIME TO TIME.

**B.  THE HOA FORECLOSURE SALE**

3.     Solimar Condominium Association, Inc. commenced a foreclosure action in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida, which ultimately resulted in the entry of a *Consent Final Judgment of Foreclosure* ("the HOA Judgment") on March 5, 2013, in the amount of $57,917.77. A true and correct copy of the *HOA Judgment* is attached as **Exhibit B**.

4.     On May 6, 2013, Sanibel Realty Trust, LLC (the "Debtor") allegedly purchased the Property at a foreclosure sale. The Certificate of Sale and Certificate of Title are attached hereto as **Exhibit C.**

**C.  THE MOVANT'S FORECLOSURE SALE**

5.     Movant commenced a foreclosure action in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida, against the Borrowers and Debtor, which ultimately resulted in the entry of a *Final Judgment of Foreclosure* ("the Final Judgment") on May 8, 2018, in the amount of $636,193.34. A true and correct copy of the *Final Judgment* is attached as **Exhibit D**.

**D.     THE BANKRUPTCY CASE**

6.     On November 11, 2022, Debtor commenced the instant case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. (*See* Dkt No. 1).

7.     On May 8, 2023, Creditor filed its Proof of Claim listing a secured Claim of $854,118.63, including pre-petition arrears of $570,775.50. (*See* Claim No. 4-1). Pursuant to the Claim, Creditor pays taxes for the Property, not the Debtor.

8.      To date, Debtor has yet to file and/or confirm a Chapter 11 Plan.

9.      Debtor is delinquent on monthly operating reports.

**E.      LOAN STATUS**

10.     The current monthly mortgage payment is $3,849.70. Payments pursuant to the Note have been in default and remain in default since October 1, 2007. Debtor has made no post-petition payments. Due to entry of the Final Judgment, the balance of the Loan is due in full.

11.     Movant's security interest in the subject property is being significantly jeopardized by Debtor's failure to make regular payments under the subject loan documents while Movant is prohibited from pursuing lawful remedies to protect such security interest.

**III.      ARGUMENT**

**1.      Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(1).**

12.     Relief from the automatic stay is warranted under §362(d)(1) due to the lack of adequate protection. 11 U.S.C. §362(d)(1). Whether cause exists to grant the requested relief is determined by the court "on a case-by-case basis" and further "may be reversed only upon a showing of abuse of discretion." *See In re Bryan Road, LLC*, 382 B.R. 844 (Bankr. S.D. Fla. 2008) (citing, *In re Dixie Broad., Inc*. 871 F.2d 1023, 1026 (11th Cir. 1989); *See also, e.g., In re Jefferson County, Alabama*, 484 B.R. 427 (Bankr. N.D. Ala. 2012). A debtor's failure to make contractual payments constitutes cause for relief under §362(d)(1). The court maintains the right to grant relief from stay for cause when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, has not made required payments, or is using bankruptcy as a means to delay payment or foreclosure. *In re Harlan*, 783 F.2d 839 (9th Cir. 1986); *In re Ellis*, 60 B.R. 432 (B.A.P. 9th Cir. 1985).

13.     Here, Movant is not adequately protected as Debtor failed to make payments owed on the Note. On May 8, 2018, a Final Judgment was entered in the amount of $636,193.34. Creditor filed its Proof of Claim listing a secured Claim of $854,118.63, including pre-petition arrears of $570,775.50. (*See* Claim No. 4-1). Payments pursuant to the Note have been in default and remain in default since October 1, 2007. Debtor has made no post-petition payments. As a result, Debtor has not been diligent in carrying out its duties in the bankruptcy case and has not made required payments. *In re Harlan*, 783 F.2d 839 (9th Cir. 1986). Further, by failing to pay the Note and taxes, Debtor is allowing the estate's interest

in the Property to decline as Movant's Claim increases. The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to maintain their property while failing to pay their mortgages for extended periods of time; such an abuse of the protections afforded constitutes cause pursuant to § 362(d)(1). *In re Three Tuns, Inc.*, 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983). As a result, relief from the automatic stay is warranted under 362(d)(1).

**2.     Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(2)(A).**

14. Relief from the automatic stay is warranted under §362(d)(2) due to the lack of equity in the Property. 11 U.S.C. §362(d)(2)(A); *In re Stewart*, 11 B.R. 93, 94 (Bankr. N.D. Ga. 1981). However, the mere existence of an equity cushion does not constitute adequate protection *per se*. Generally, a 20% or greater equity cushion is deemed sufficient by the courts. *See In re Senior Care Properties, Inc.*, 137 B.R. 527, 528-29 (Bankr. N.D. Fla. Feb. 25, 1992)(analyzing the sufficiency of various equity cushions). Conversely, an equity cushion of less than 20% has generally been held to be insufficient. *In re Big Dog II, LLC*, 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019).

15. Here, Debtor alleged the Property has a value of $450,000.00 on Schedule A (See **Exhibit E**). Creditor filed its Proof of Claim listing a secured Claim of $854,118.63. As a result, there is no equity in the Property to protect Movant's interests and relief is appropriate under §362(d)(2)(A).

**3.     Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(2)(B).**

16. Relief from the automatic stay is warranted under §362(d)(2) as the Property is unnecessary for an effective reorganization. Once a movant under 11 U.S.C. § 362(d)(2)(A) establishes that a debtor or estate has no equity in property, it is the burden of the debtor or trustee to establish that the collateral at issue is necessary to an effective reorganization. 11 U.S.C. § 362(g)(2); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 375–76 (1988). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the property will be needed for it; but also that the ***property is essential*** for an effective reorganization that is in prospect. This means that there must be a ***reasonable possibility*** of a successful reorganization within a ***reasonable***

*amount of time*. *Timbers*, 484 U.S. at 375.

17. Here, Debtor failed to submit any evidence to suggest the Property itself is necessary for an effective reorganization. As the Property **produces little to no income, it provides no benefit to the estate; and is therefore unnecessary for the Debtor's effective reorganization**. If anything, the Property poses a burden to the estate as there is no equity in the Property and the Debtor lacks the income to cure the arrearage or Judgment through a Plan. Thus, Debtor failed to meet its burden under 11 U.S.C. § 362(g)(2).

18. Further, Debtor failed to provide evidence that a successful reorganization is in prospect within a reasonable time. As stated above, the Debtor must have more than visionary promises and willingness, Debtor must demonstrate concrete evidence of a sufficient cash flow to fund and maintain both operations and obligations under a proposed Chapter 11 Plan. What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the Property will be needed for it; but also that the Property is essential for an effective reorganization that is **in prospect**. This means that there must be a **reasonable possibility** of a successful reorganization within a **reasonable amount of time**. *Timbers*, 484 U.S. at 375.

19. Here, Debtor has yet to file or confirm a Chapter 11 Plan. As a result, there is no **reasonable possibility** of a successful reorganization within a **reasonable amount of time** and Creditor requests relief under 11 U.S.C. § 362(d)(2).

## IV.    CONCLUSION

1.    Movant further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtor.

2.    Pursuant to 11 U.S.C. §362(e), Movant hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

3.    Movant hereby seeks attorneys' fees in the amount of $1,050.00 and costs in the amount of $188.00 incurred in filing this Motion for Relief from the Automatic Stay.

4.    Movant respectfully requests that the Court waive the fourteen (14) day stay of the

Order Granting Relief pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

      **WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in Debtor's property outside of the bankruptcy forum, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, that Debtor be required to pay Movant's attorneys' fees and costs incurred in filing this Motion, that the Court waive the fourteen (14) day stay, that Movant be permitted to communicate with Debtor for the purposes stated above, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:

Wanda D. Murray
Bar No.: 566381
Attorney for Movant
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing Motion for Relief from the Automatic Stay to be served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTOR ATTORNEY**
**(via electronic notice)**

Nathan G Mancuso
ngm@mancuso-law.com

**DEBTOR**

Sanibel Realty Trust LLC
11460 SW 156 Ave.
Miami, FL 33196

**UNITED STATES TRUSTEE**
**(via electronic notice)**

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Dated: May 17, 2023

**20 LARGEST UNSECURED**
**CREDITORS LIST:**

U.S. Bank Trust, N.A.
c/o Deborah Posner, Esq.
Popkin & Rosaler, P.A.
1701 West Hillsborough, Blvd Ste 400
Deerfield Beach, FL 33442

U.S. Bank, N.A.
c/o Spencer Gollahon, Esq.
Robertson, Anschutz, et al, PLLC
6409 Congress Ave., Ste 100
Boca Raton, FL 33487

/s/ Wanda D. Murray
Wanda D. Murray
Bar No.: 566381
Attorney for Movant
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index – Rate Caps)
(As Published In *The Wall Street Journal*)

MIN #: █████████     Loan #: ████████

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTERESTRATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

November 30th, 2005                    Surfsied                    Florida
[Date]                                  [City]                      [State]

9595 Collins Avenue, PH-6, Surfside, Florida  33154
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 492,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender.

The Lender is Flick Mortgage Investors, Inc., A Florida Corporation

I will make all payments under this Note in the form of cash. check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.125 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on January 1st, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1st, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at  9155 S. Dadeland Blvd. PH-1, S
Miami, FL 33156
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

SEE ATTACHED INTEREST–ONLY ADDENDUM.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of December, 2010 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date".

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market (LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX - Single Family - Fannie Mae MODIFIED INSTRUMENT                    Form 3520 1/01



**Composite Exhibit A**

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and one quarter** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(d) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **13.125** % or less than **3.125** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.125** %. My interest rate will never be less than **2.250** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY   ** See Attached Prepayment Note Addendum**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

---



**Composite Exhibit A**

**(D) No Waiver by Note Holder**

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of      Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:



**Composite Exhibit A**

**Transfer of the Property or a beneficial Interest in Borrower.**    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

The provisions contained in the "Addendum to Note", signed by all borrowers named herein, are hereby incorporated into and shall amend and supplement this Note.

WITTNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Dominic J. Abreu        - Borrower                               - Borrower

~~WITHOUT RECOURSE PAY TO THE ORDER OF~~          _____ (Seal)
COUNTRYWIDE BANK, N.A.                                          - Borrower
FLICK MORTGAGE INVESTORS, INC.
A FLORIDA CORPORATION
                                                                _____ (Seal)
ASSISTANT SECRETARY                                            - Borrower
FRANCES Midgans

---

**Composite Exhibit A**

Pay to the order of:

Pay to the order of:

Countrywide Home Loans, Inc.

Without Recourse
Countrywide Bank, N.A.

Without Recourse
Countrywide Home Loans, Inc.

By: *Laurie Medor* By: *Michele Sjolander*

Laurie Medor, SVP

Michele Sjolander, SVP

**Composite Exhibit A**

```
CFN  2005R1291634
OR Bk 24049 Pgs 1790 - 1814; (25pgs)
RECORDED 12/14/2005 13:16:08
MTG DOC TAX 1,722.00
INTANG TAX 984.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

Return To:

Flick Mortgage Investors, Inc.

9155 S Dadeland Blvd PH-1, Ste 1712
Miami, FL 33156
305-671-7777

This document was prepared by:
Linda Baboun
9155 S Dadeland Blvd PH-1, Ste 1712
Miami, FL 33156
305-671-1817

——————————————————[Space Above This Line For Recording Data]——————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated November 30th, 2005 ,
together with all Riders to this document.
(B) **"Borrower"** is Dominic J. Abreu  and Dolores Abreu , Husband and Wife

Borrower is the mortgagor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) **"Lender"** is  Flick Mortgage Investors, Inc.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010  1/01

-6A(FL) (0005).01
Page 1 of 16                        Initials:
VMP MORTGAGE FORMS - (800)521-7291

# Composite Exhibit A

Lender is a **Corporation**
organized and existing under the laws of **The State of Florida**
Lender's address is 9155 S. Dadeland Blvd. PH-1, S, Miami, FL 33156

**(E) "Note"** means the promissory note signed by Borrower and dated **November 30th, 2005**
The Note states that Borrower owes Lender **Four Hundred Ninety Two Thousand and
no/100.**
Dollars
(U.S. $     **492,000.00**     ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than     **December 1st, 2035**     .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☒ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | **Prepayment Rider** |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

-6A(FL) (0905).01                          Page 2 of 16                          Form 3010   1/01

# Composite Exhibit A

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the      County       [Type of Recording Jurisdiction] of          Miami-Dade                    [Name of Recording Jurisdiction]:

```
Condominium Unit No. N PH-F, in the North Building, in SOLIMAR
CONDOMINIUM, according to the Declaration thereof, recorded June 13,
2001, in Official Records Book 19719, at Page 307, of the Public Records
of Miami-Dade County, Florida, an Amendment to the Declaration of
Condominium of Solimar Condominium, recorded January 8, 2002, in
Official Records Book 20130, at Page 185, of the Public Records of
Miami-Dade County, Florida, as amended and/or supplemented from time to
time.
```

Parcel ID Number: 14-2235-042-0600                which currently has the address of
                    9595 Collins Avenue, PH-6                                  [Street]
**Surfside**                              [City], Florida      33154      [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005).01                      Page 3 of 16          Initials _____        Form 3010  1/01

**Composite Exhibit A**

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

-6A(FL) (0005).01                          Page 4 of 16                    Initials: ___                Form 3010  1/01

**Composite Exhibit A**

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6A(FL) (0005).01                          Page 5 of 16                    Initials: _____        Form 3010  1/01

Composite Exhibit A

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

-6A(FL) (0005).01                    Page 6 of 16          Initials:                    Form 3010  1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(FL) (0005).01                    Page 7 of 16          Initials        Form 3010  1/01

**Composite Exhibit A**

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

-6A(FL) (0005).01                                Page 8 of 16                      Initials:                    Form 3010   1/01

**Composite Exhibit A**

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for **Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6A(FL) (0005).01                    Page 9 of 16                    Initials: [signature]    Form 3010   1/01

**Composite Exhibit A**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

-6A(FL) (0005).01                              Page 10 of 16                    Initials: _____            Form 3010   1/01

**Composite Exhibit A**

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

-6A(FL) (0005).01                          Page 11 of 16          Initials: _____          Form 3010   1/01

**Composite Exhibit A**

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

**Composite Exhibit A**

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-6A(FL) (0005).01                          Page 13 of 16          Initials: _____          Form 3010   1/01

**Composite Exhibit A**

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

-6A(FL) (0005).01                               Page 14 of 18                    Initials: ____    Form 3010   1/01

**Composite Exhibit A**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
                 V. noCA                                        Dominic J. Abreu               -Borrower


                                                                                           (Address)
_____          _____ (Seal)
                 L. Oncri                                      Dolores Abreu                 -Borrower


                                                                                           (Address)
_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower


        (Address)                                              (Address)
_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower


        (Address)                                              (Address)
_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower


        (Address)                                              (Address)


-6A(FL) (0005).01                    Page 15 of 16                    Form 3010   1/01

**Composite Exhibit A**

STATE OF FLORIDA, Miami-Dade         County ss:

     The foregoing instrument was acknowledged before me this   November 30th, 2005     by
Dominic J. Abreu and Dolores Abreu

who is personally known to me or who has produced   *FL DRivers license*   as identification.

                                           Notary Public

VIVIAN R. ROCA
MY COMMISSION EXPIRES
September 9, 2008
#DD353932
Bonded Thru
Troy Fain Insurance
1-800-385-7019
NOTARY PUBLIC, STATE OF FLORIDA

-6A(FL) (0005).01               Page 16 of 16            Initials:                Form 3010   1/01

# Composite Exhibit A

This instrument prepared by:
*CW-CAC
Butler & Hosch, P.A.
31800 Montfort Drive, Suite 300
Dallas, Texas 75240
Property Appraisers Parcel Identification Number:  14-2235-042-0660
Loan Number: ***

CFN 2008R0641783
OR Bk 26512 Pgs 1294 - 1295; (2pgs)
RECORDED 08/06/2008 12:57:45
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

## <u>ASSIGNMENT OF MORTGAGE</u>
### KNOW ALL MEN BY THESE PRESENTS:

That **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FLICK MORTGAGE INVESTORS, INC.**, party of the first part, in consideration of the sum of $10.00 and other valuable considerations, received from or on behalf of **U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE HOLDERS OF GSAA 2006-5**, party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto the said party of the second part a certain mortgage bearing the date November 30, 2005, executed by DOMINIC J. ABREU AND DOLORES ABREU, husband and wife, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FLICK MORTGAGE INVESTORS, INC., and recorded in Official Records Book 24049, Page 1790, Public Records of Miami-Dade County, State of Florida, upon the following described piece or parcel of land, situate and being in said County and State, to-wit:

> **Condominium Unit No. N PH-F,  in the North Building of SOLIMAR CONDOMINIUM, according to the Declaration thereof, recorded June 13, 2001, in Official Records Book 19719, at Page 307, of the Public Records of Miami-Dade County, Florida, an Amendment to the Declaration of Condominium of Solimar Condominium, recorded January 8, 2002, in Official Records Book 20130, at Page 185 of the Public Records of Miami-Dade County, Florida, as amended and/ or supplemented from time to time. Together with an undivided interest in the common elements appurtenant thereto, as set forth in said Declaration.**

Together with the note or obligation described in said mortgage, and the monies due and to become due thereon.

**TO HAVE AND TO HOLD** the same unto the said party of the second part, its heirs, legal representatives, successors and assigns forever.

**IN WITNESS WHEREOF,** The said corporation has caused these presents to be executed in its name, and its corporate seal to be hereunto affixed by its proper officers thereunto duly authorized, this _____ day of _____ A.D. 2008.

MAY 2 9 2008

(Corporate Seal)

MORTGAGE        ELECTRONIC        REGISTRATION
SYSTEMS,    INC.,    AS    NOMINEE    FOR    FLICK
MORTGAGE INVESTORS, INC.

By: _____

Print name: ~~ELY HARLESS, VICE PRESIDENT~~

Title: _____



B&H # � ▇

# Composite Exhibit A

STATE OF **TEXAS**

COUNTY OF **COLIN**

BEFORE ME, the undersigned officer, personally appeared _____ **ELY HARLESS** _____ as

_____ **VICE PRESIDENT** _____, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
AS NOMINEE FOR FLICK MORTGAGE INVESTORS, INC., a corporation organized and existing under and by
virtue of the laws of the United States of America, named as party of the first part in the foregoing instrument, and that
they severally acknowledged executing the same in the presence of two subscribing witnesses freely and voluntarily
under authority duly vested in them by said corporation, and that the seal affixed thereto is the true corporate seal of said
corporation.

WITNESS my hand and official seal in the County and State last aforesaid this _____ day of
**MAY 2 9 2008** A.D. 2008.

*Mary Chavarria*
Notary Signature

**MARY CHAVARRIA**
Printed Name

My Commission Expires:

*(Notary Seal)*

MARY CHAVARRIA
My Commission Expires
May 11, 2011

B&H #▮▮▮▮

**Composite Exhibit A**

4 text
FJUD          $ 57,917.77
1-3

FILED
2013 MAR - 1  10:37

60905467

**SOLIMAR CONDOMINIUM
ASSOCIATION, INC.,** a non-profit
Florida corporation,

         Plaintiff,

vs.

DOMINIC J ABREU, DOLORES
ABREU, HUSBAND AND WIFE, et. al.,

         Defendant(s).

_____/

5/1/3

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-17033 CA 13

**PUBLISH IN THE MIAMI DAILY BUSINESS
REVIEW**

<u>**CONSENT FINAL
JUDGMENT OF FORECLOSURE**</u>

FORECLOSURE

         THIS ACTION was heard before the Court on Plaintiff's Motion for Summary Final
Judgment of Foreclosure on **MARCH 5, 2013**. On the evidence presented IT IS ADJUDGED that:

1.     The Plaintiff's Motion for Summary Judgment of Foreclosure is GRANTED. Service of
process been duly and regularly obtained over DOMINIC J ABREU, DOLORES ABREU,
HUSBAND AND WIFE and AMERIPORT, LTD, defendants.

2.     There is due and owing to the Plaintiff the following:

| | |
|---|---:|
| Principal due for assessments, special assessments and late fees through 3/2013: | $38,920.33 |
| Interest on Assessments from 08/2008 to 03/2013 | $15,090.36 |
| Interest on Special Assessment | $12.78 |
| Title search expenses | $266.00 |
| Taxes for the year of | $    N/A |
| Insurance premiums | $    N/A |

| <u>Court Costs:</u> | |
|---|---:|
| Filing fee-Claim of Lien | $18.50 |
| Filing fee-Notice of Lis Pendens and Complaint | $446.00 |
| Service of Process at $175.00 per defendant | $175.00 |
| Publication for Notice of Sale | $165.00 |

FINAL ORDERS AS TO ALL PARTIES
SRS DISPOSITION
NUMBER ____ 12
THE COURT DISMISSES [...] AGAINST
ANY PARTY NOT LISTED IN THIS [...] OR [...]
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.
         Judge's Initials   DI

Bk 28516 Pg 3535 CFN 20130173688 03/06/2013 08:03:53 Pg 1 of 4 Mia-Dade Cty, FL

# EXHIBIT B

| | |
|---|---|
| Recording Fee, Release of Lien and Satisfaction of Judgment | $20.00 |
| **SUBTOTAL** | $55,113.97 |

Additional Costs:

| | |
|---|---|
| Review of File by Randi Krongold, Esq. | $75.00 |
| Review of File by Ryan Lamchick, Esq. | $50.00 |
| Administrative Fees | $178.80 |
| **SUBTOTAL** | $55,417.77 |

Attorney fees based upon 23.46 hours at $225.00 per hour ~~$5,278.50~~ *$2,500* JG

Less: Undisbursed escrow funds     $   N/A

Less: Unearned insurance premiums     $   N/A

GRAND TOTAL     ~~$60,696.27~~
*$57,917.77* JG

3. The grand total amount referenced in Paragraph 2 shall bear interest from this date forward at the interest rate of eighteen 00/100 percent (18.00%) as specified in the Declaration.

4. Plaintiff, whose address is 9559 COLLINS AVENUE, MANAGEMENT OFFICE, SURFSIDE FLORIDA 33154, holds a lien for the grand total sum specified in Paragraph 2 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to Florida Statutes, Section 718.116 . The plaintiff's lien encumbers the subject property located in MIAMI-DADE County, Florida and described as:

Condominium Unit No NPHF Building No. N/A
of SOLIMAR CONDOMINIUM, as recorded in Official Records Book 19719, at Page 307 of the Public Records of Miami-Dade County, Florida.

**PROPERTY ADDRESS: 9595 COLLINS AVENUE #N PH-F MIAMI BEACH FLORIDA 33154**

5. If the grand total amount with interest at the rate described in Paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on _____MAY   6 2013_____, to the highest bidder for cash, except as prescribed in Paragraph 6, at *60 DAYS* *AUTHORIZED*

[✓]www.miamidade.realforeclosure.com, the Clerk's website for on-line auctions at 9:00 a.m.

after having first given notice as required by Section 45.031, Florida Statutes.

6. Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The clerk shall received the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and the title that shall be assessed as costs.

**EXHIBIT B**

7.  On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in Paragraph 2 from this date to the date of the sale. During the sixty (60) days after the Clerk issues the certificate of disbursements, the clerk shall hold the surplus pending further Order of this Court.

8.  On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

9.  On filing of the Certificate of Title, defendant and all persons claiming under or against defendant since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale shall be let into possession of the property, subject to the provisions of the "Protecting Tenant at Foreclosure Act of 2009."

10. The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that _____ hours were reasonably expended by plaintiff's counsel and that an hourly rate of $_____ is appropriate. PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF. The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to <u>Florida Patient's Compensation Fund v. Rowe</u>, 472 So.2d 1145 (Fla. 1985).

11. In consideration of the entry of this Consent Judgment, Plaintiff shall not proceed against the Defendants, DOMINIC J. ABREU and DOLORES ABREU for any personal liability for the unpaid assessments nor shall pursue a deficiency judgment against these Defendants.

12. NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST. (2006) IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

    IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

    IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 73 W. FLAGLER STREET, MIAMI, FLORIDA 33130 **HARVEY RUVIN (305) 375-5943** WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

    IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT

Bk 28516 Pg 3537 CFN 20130173688 03/06/2013 08:03:53 Pg 3 of 4 Mia-Dade Cty, FL

**EXHIBIT B**

RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT **LEGAL AID SOCIETY OF THE DADE COUNTY BAR ASSOCIATION 123 N.W. FIRST AVENUE, 3RD FLOOR, MIAMI, FLORIDA 33128 PHONE: (305) 579-5733** TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT LEGAL AID SOCIETY OF THE DADE COUNTY BAR ASSOCIATION FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

ORDERED at Miami-Dade, Florida, on _March 5_ , 2013.

Circuit Judge

Copies furnished to:

**MARYVEL DE CASTRO VALDES, Esq.**
**Siegfried Rivera Lerner**
**De La Torre & Sobel, P.A.**
201 Alhambra Circle, Eleventh Floor
Coral Gables, Florida 33134
mvaldes@siegfriedlaw.com
collections1@siegfriedlaw.com

**DOMINIC J. ABREU**
**DOLORES ABREU**
5720 GRANADA BLVD.
CORAL GABLES, FLORIDA 33146

**AMERIPORT LTD.**
2891 SW 69 COURT
MIAMI, FLORIDA 33155

**CURRENT RESIDENT(S)**
9595 COLLINS AVENUE, #N PH-F
MIAMI BEACH, FLORIDA 33154

Daryl E. ...
Circuit ...

COPY HAND DELIVERED
TO PLTF'S ATTY
IN LIEU OF MAILING

Bk 28516 Pg 3538 CFN 20130173688 03/06/2013 08:03:53 Pg 4 of 4 Mia-Dade Cty, FL

**EXHIBIT B**



CFN 2013R0432125
OR Bk 28656 Pgs 0043 - 44; (2pgs)
RECORDED 05/31/2013 10:13:11
DEED DOC TAX 390.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SOLIMAR CONDO ASSN INC
Plaintiff(s) / Petitioner(s)
VS.
ABREU, DOMINIC J , et al.
Defendant(s) / Respondents(s)

| GENERAL JURISDICTION DIVISION | |
|---|---|
| Case No: | 10017033CA01 |
| Section: | 13 |
| Doc Stamps: | $390.60 |
| Surtax: | $0.00 |
| Consideration | $65,100.00 |

### CERTIFICATE OF TITLE

**The undersigned clerk** of the court certifies that a Certificate of Sale was executed and filed in this action on May 09, 2013, for the property described herein and that no objections to the sale have been filed within the time allowed for filing objections. The following property in Miami-Dade County, Florida:

- SEE ATTACHMENT -

was sold to:
SANIBEL REALTY TRUST LLC
1200 Brickell Avenue
Suite 1950
Miami. FL, 33131

WITNESS my hand and the seal of this court on  May 23, 2013 .

*Harvey Ruvin*

Harvey Ruvin, Clerk of Courts
Miami-Dade County. Florida

FILED FOR ...
2013 MAY 24  AM 8: 51
CLERK ...

1

**EXHIBIT C**

Book28656/Page43     CFN#20130432125          Page 1 of 2

OR BK 28656 PG 0044
LAST PAGE

CERTIFICATE OF TITLE

Case No: 10017033CA01

Condominium Unit No NPHF Building No. N/A
of SOLIMAR CONDOMINIUM, as recorded in Official Records Book 19719, at Page 307 of the
Public Records of Miami-Dade County, Florida.

**PROPERTY ADDRESS: 9595 COLLINS AVENUE #N PH-F MIAMI BEACH FLORIDA 33154**

**EXHIBIT C**

FILED FOR RECORD

2018 MAY 10 AM 8:19

HARVEY RUVIN
CLERK CIRCUIT & COUNTY CTS
MIAMI-DADE COUNTY, FLA
CIVIL DIVISION

FORECLOSURE

| | |
|---|---|
| **IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN & FOR MIAMI-DADE COUNTY, FLORIDA** | *FOR CLERK'S USE ONLY* |
| Clerk Case Number: 2015-CA-026698<br>Division: Circuit Civil<br><br>Nationstar Mortgage LLC,<br>    Plaintiff(s),<br><br>vs.<br>Sanibel Realty Trust LLC; Dominic J. Abreu; Ameriport Ltd, Corp. f/k/a Ameriport Ltd;Solimar Condominium Association, Inc.;  Unknown Parties in Possession #1, If living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants; Unknown Parties in Possession #2, If living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants<br><br>Defendant(s). | |
| **FINAL JUDGMENT OF FORECLOSURE** | |
| *Pursuant to Administrative Memorandum CIV 12-E 24 CA 01* | |

**THIS ACTION** was heard before the Court on a Non-Jury Trial on May 8, 2018. On the evidence presented,

**IT IS ORDERED AND ADJUDGED** that Final Judgment is **GRANTED** against all Defendants listed by name:

2015-CA-026698

1

**EXHIBIT D**

**Sanibel Realty Trust LLC; Dominic J. Abreu; Ameriport Ltd, Corp. f/k/a Ameriport Ltd;Solimar Condominium Association, Inc.;  Unknown Parties in Possession #1, If living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants; Unknown Parties in Possession #2, If living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants**

1. **Amounts Due and Owing.** Plaintiff is due:

| | | |
|---|---|---|
| Principal Due on the note secured by the mortgage foreclosed | $491,927.65 | ✓ |
| Interest on the note and mortgage from September 1, 2007 through May 3, 2018 | ~~$237,561.93~~ $107,442.29 | |
| Interest to the date of this Judgment | $261.15 | |
| Title search expenses | $350.00 | ✓ |
| Taxes for the year(s) of | ~~$116,649.49~~ $67,812.20 | |

| Year | Amount |
|---|---|
| 2017 | $11,275.44 |
| 2016 | $11,031.76 |
| 2015 | $10,083.14 |
| 2014 | $9,188.09 |
| 2013 | $9,534.00 |
| 2012 | $8,824.49 |
| 2011 | $7,875.28 |
| ~~2010~~ | ~~$8,393.59~~ |
| ~~2009~~ | ~~$7,592.20~~ |
| ~~2008~~ | ~~$32,851.50~~ |

| | | |
|---|---|---|
| Insurance premiums for the year(s) of | | $0.00 |

Attorneys' Fees:

| | | |
|---|---|---|
| Finding as to reasonable number of hours | 30.4 | |
| Finding as to reasonable hourly rate | $175.00 | |
| Finding as to reasonable number of hours | 99.1 | |
| Finding as to reasonable hourly rate | $215.00 | |
| Other*: | $3,450.00 | |
| Attorneys' Fees Total | | $30,076.50 |

2015-CA-026698

2

**EXHIBIT D**

*(The requested attorney's fee is a flat rate fee that the firm's client agreed to pay in this matter.  Given the amount of the fee requested and the labor expended, the Court finds that a lodestar analysis is not necessary and that the flat fee is reasonable.)

The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that _____ hours were reasonably expended by plaintiff's counsel and that an hourly rate of _____ is appropriate.  PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.  The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 S.2d 1145 (Fla. 1985).

 Court Costs, Now Taxed:

| | |
|---|---|
| Complaint Filing Fee/ Statutory Convenience Fee | $1,974.00 |
| Lis Pendens Filing Fee | $9.00 |
| Service of Process at $110.00 / Sanibel Realty Trust LLC $596.30 / Dominic J. Abreu $110.00 / Ameriport Ltd, Corp. f/k/a Ameriport Ltd $55.00 / Solimar Condominium Association, Inc. $55.00 / Unknown Parties in Possession #1 n/k/a Janine Mills $55.00 / Unknown Parties in Possession #2 | $981.30 |
| Publication for Service for Ameriport Ltd, Corp. f/k/a Ameriport Ltd | $230.00 |

SUBTOTAL                                                 ~~$880,021.02~~ ₩
                                                              $633,471.89

 Additional Costs:

| | |
|---|---|
| Mediation Cost | $215.00 |
| Bond Premium Cost | $111.50 |
| Skip Trace Cost | $200.10 |
| Court Reporter Cost | $2,194.85 ₩ |
| SUBTOTAL | ~~$882,742.47~~ |

                                                              $636,193.34

| | |
|---|---|
| Less: Escrow Balance | $0.00 |
| Less: Other Suspense | $0.00 |

GRAND TOTAL                                           ~~$882,742.47~~ ₩
                                                              $636,193.34

2. **Interest.** The grand total amount referenced in Paragraph 1 shall bear interest from this date forward at the prevailing legal rate of interest,

2015-CA-026698

3

**EXHIBIT D**

5.72% a year.

3. **Lien on Property.** Plaintiff, whose address is ***8950 Cypress Waters Blvd, Coppell, Texas 75019***, holds a first mortgage lien for the grand total sum superior to all claims or estates of the defendant(s), on the following described property in Miami-Dade County, Florida:

CONDOMINIUM UNIT NO. N PH-F, IN THE NORTH BUILDING, OF SOLIMAR CONDOMINIUM, ACCORDING TO THE DECLARATION THEREOF, RECORDED JUNE 13, 2001, IN OFFICIAL RECORDS BOOK 19719, AT PAGE 307, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, AN AMENDMENT TO THE DECLARATION OF CONDOMINIUM OF SOLIMAR CONDOMINIUM, RECORDED JANUARY 8, 2002, IN OFFICIAL RECORDS BOOK 20130, AT PAGE 185, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, AS AMENDED AND/OR SUPPLEMENTED FROM TIME TO TIME; TOGETHER WITH AN UNDIVIDED SHARE IN THE COMMON ELEMENTS APPURTENANT THERETO.

Property Address: 9595 Collins Avenue, Unit N PH-F, Surfside, FL 33154

4. **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 2 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale Pursuant to Administrative Order 09-18, the Clerk of the Courts for the Eleventh Judicial Circuit is authorized to conduct on-line public auctions of real property in lieu of on-site auctions. The Clerk of the Courts shall conduct the sale online at www.miamidade.realforeclose.com commencing at 9:00 A.M. on _____, 2018 to the highest bidder for cash.

5. **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for documentary stamps affixed to the certificate of title. If plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

6. **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorney's fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in Paragraph 2 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

2015-CA-026698

**EXHIBIT D**

7. **Right of Possession.** Upon the filing of the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under Chapter 718 or Chapter 720, Fla. Stat., if any. Upon filing the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property, subject to the provisions of the "Protecting Tenants at Foreclosure Act 2009, which was extended until 12/31/14 by the Dodd Frank Wall Street Reform and Consumer Protection Act.

8. **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

**IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF.  YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI, FLORIDA (TELEPHONE: (305) 375-5943) WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.**

**IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL THE PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION.  IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE**

2015-CA-026698

5

**EXHIBIT D**

COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER THE RECEIPT OF THIS NOTICE.

**DONE AND ORDERED** in Open Court in Miami-Dade County, Florida, this 8th day of May, 2018.

FINAL ORDERS AS TO ALL PARTIES
SRS DISPOSITION
NUMBER ____12____
THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.
Judge's Initials

Circuit Judge

William Thomas
Circuit Court Judge

Copies furnished to all parties named on the service list:

SHAPIRO, FISHMAN & GACHÉ, LLP, 2424 North Federal Highway, Suite 360, Boca Raton, FL 33431 Fax: (561) 998-6707

Sanibel Realty Trust LLC
c/o Erik Wesoloski, Esq.
Wesoloski Carlson, P.A.
848 Brickell Avenue
Suite 302
Miami, FL 33131

Dominic J. Abreu
c/o Erik Wesoloski, Esq.
Wesoloski Carlson, P.A.
848 Brickell Avenue
Suite 302
Miami, FL 33131

Ameriport Ltd, Corp. f/k/a Ameriport Ltd
c/o David Horowitz, R.A.
2891 Southwest 69th Court
Miami, FL 33155

2015-CA-026698

6

**EXHIBIT D**

Solimar Condominium Association, Inc.
c/o Steve J. Lachterman, Esq.
2655 South Le Jeune Road, #PH 1 D
Coral Gables, FL 33134

Unknown Parties in Possession #1 n/k/a Janine Mills
9595 Collins Avenue
Unit N PH-F
Surfside, FL 33154

Wesley B. Colgan, III, 848 Brickell Ave., Suite 302, Miami, FL 33131 Fax: (954)208-0693

Sanibel Realty Trust LLC, c/o Erik Wesoloski, Esq., service@wesoloskicarlson.com

Dominic J. Abreu, c/o Erik Wesoloski, Esq., service@wesoloskicarlson.com

Solimar Condominium Association, Inc., c/o Steve J. Lachterman, Esq., steven@Lachterman.com

cc: Wesley B. Colgan, III, service@codolaw.com

*A copy of this served document may be obtained, on request, from the clerk of the court or by contacting Shapiro, Fishman & Gaché, LLP.*

15-289948 FC01 CXE

2015-CA-026698

7

**EXHIBIT D**

---

**Fill in this information to identify the case:**

Debtor name    **Sanibel Realty Trust LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF FLORIDA

Case number (if known)    **22-18729-RAM**

☐ Check if this is an amended filing

---

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
| --- | --- |

**1. Does the debtor have any cash or cash equivalents?**

■ No.  Go to Part 2.
☐ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
| --- | --- |

| Part 2: | Deposits and Prepayments |
| --- | --- |

**6. Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
| --- | --- |

**10. Does the debtor have any accounts receivable?**

■ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
| --- | --- |

**13. Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
| --- | --- |

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
| --- | --- |

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.

---

Official Form 206A/B      Schedule A/B Assets - Real and Personal Property      page 1

# EXHIBIT E

Debtor    **Sanibel Realty Trust LLC**
    Name                                 Case number *(If known)* **22-18729-RAM**

☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No. Go to Part 8.
☐ Yes Fill in the information below.

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No. Go to Part 9.
☐ Yes Fill in the information below.

| Part 9: | Real property |
|---|---|

54. **Does the debtor own or lease any real property?**

☐ No. Go to Part 10.
■ Yes Fill in the information below.

55.      **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1.   **10110 SW 154 Circle Ct., Unit 108-1 Miami, FL 33186 residential condominium property (Hammocks) 3BR/2BA/1,750 sf** | fee simple | $200,000.00 | Appraisal | $200,000.00 |
| 55.2.   **9499 Collins Ave., PH06 Surfside, FL 33179 residential condominium property (Spiaggia) 3BR/3BA/2,878 sf** | fee simple | $900,000.00 | Appraisal | $900,000.00 |
| 55.3.   **9595 Collins Ave., Unit NPHF Surfside, FL 33179 residential condominium property (Solimar) 1BR/2BA/1,260 sf** | fee simple | $450,000.00 | Appraisal | $450,000.00 |

# EXHIBIT E

Debtor  **Sanibel Realty Trust LLC**
Name                                                    Case number *(If known)* **22-18729-RAM**

| | |
|---|---|
| 56. | **Total of Part 9.** |
| | Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. |
| | Copy the total to line 88. |

**$1,550,000.00**

57.  **Is a depreciation schedule available for any of the property listed in Part 9?**
■ No
☐ Yes

58.  **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
■ No
☐ Yes

**Part 10:    Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

**Part 11:    All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

■ No.  Go to Part 12.
☐ Yes Fill in the information below.

**EXHIBIT E**

| Debtor | **Sanibel Realty Trust LLC** | Case number *(If known)* **22-18729-RAM** |
|---|---|---|
| | Name | |

---

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*........................................................> | | $1,550,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $0.00 + 91b. | $1,550,000.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $1,550,000.00 |

# EXHIBIT E

**Fill in this information to identify the case:**

Debtor name **Sanibel Realty Trust LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF FLORIDA

Case number (if known) **22-18729-RAM**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1 Miami-Dade County Tax Collector**<br>Creditor's Name<br><br>**200 NW 2nd Ave.**<br>**Miami, FL 33128**<br>Creditor's mailing address | **Describe debtor's property that is subject to a lien**<br>**notice only**<br><br>**Describe the lien**<br>**statutory real property tax lien**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes | **$0.00** | **Unknown** |

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

| **Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |

| **2.2 Spiaggia Ocean Condominium Ass'n, Inc.**<br>Creditor's Name<br><br>**c/o Deborah S. Sugarman, Esq.**<br>**Kaye Bender Rembaum, P.L.**<br>**1200 Park Central Blvd. South**<br>**Pompano Beach, FL 33064**<br>Creditor's mailing address | **Describe debtor's property that is subject to a lien**<br>**9499 Collins Ave., PH06**<br>**Surfside, FL 33179**<br>**residential condominium property (Spiaggia)**<br>**3BR/3BA/2,878 sf**<br><br>**Describe the lien**<br>**statutory lien (HOA fees & charges)**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes | **$439,084.80** | **$900,000.00** |

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No

**Date debt was incurred**

# EXHIBIT E

| Debtor | **Sanibel Realty Trust LLC** | | Case number *(if known)* | **22-18729-RAM** |
|---|---|---|---|---|
| | Name | | | |

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ☐ No | ☐ Contingent |
| ■ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| **1. U.S. Bank, N.A.** | ☐ Disputed |
| **2. Spiaggia Ocean Condominium Ass'n, Inc.** | |

---

**2.3** | **U.S. Bank Trust, N.A.**
Creditor's Name

**c/o Deborah Posner, Esq.
Popkin & Rosaler, P.A.
1701 West Hillsborough
Blvd., Ste. 400
Deerfield Beach, FL 33442**
Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**10110 SW 154 Circle Ct., Unit 108-1
Miami, FL 33186
residential condominium property
(Hammocks)
3BR/2BA/1,750 sf**

**Describe the lien**
**first mortgage**

**Is the creditor an insider or related party?**
■ No
☐ Yes

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

$237,600.00      $200,000.00

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ■ Disputed |

---

**2.4** | **U.S. Bank, N.A.**
Creditor's Name

**c/o Spencer Gollahon, Esq.
Robertson, Anschutz, et al,
PLLC
6409 Congress Ave., Ste.
100
Boca Raton, FL 33487**
Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**9499 Collins Ave., PH06
Surfside, FL 33179
residential condominium property (Spiaggia)
3BR/3BA/2,878 sf**

**Describe the lien**
**first mortgage/foreclosure judgment**

**Is the creditor an insider or related party?**
■ No
☐ Yes

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

$1,433,741.00      $900,000.00

Creditor's email address, if known

**Date debt was incurred**
**12/2/20**
**Last 4 digits of account number**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|

# EXHIBIT E

| Debtor | **Sanibel Realty Trust LLC** | Case number *(if known)* | **22-18729-RAM** |
|---|---|---|---|
| | Name | | |

- ☐ No
- ☑ Yes. Specify each creditor, including this creditor and its relative priority. **Specified on line 2.2**

- ☐ Contingent
- ☑ Unliquidated
- ☑ Disputed

---

| 2.5 | **U.S. Bank, N.A.** | **Describe debtor's property that is subject to a lien** | $704,005.00 | $450,000.00 |
|---|---|---|---|---|
| | Creditor's Name | **9595 Collins Ave., Unit NPHF** | | |

**c/o Ludys Barringer, Esq. Shapiro Fishman & Gache, LLP**
**2424 North Federal Hwy., Ste. 360**
**Boca Raton, FL 33431**

Creditor's mailing address

**9595 Collins Ave., Unit NPHF**
**Surfside, FL 33179**
**residential condominium property (Solimar)**
**1BR/2BA/1,260 sf**

**Describe the lien**
**first mortgage/foreclosure judgment**

**Is the creditor an insider or related party?**
- ☑ No
- ☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
- ☑ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**05/08/18**
**Last 4 digits of account number**

**As of the petition filing date, the claim is:**
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Do multiple creditors have an interest in the same property?**
- ☑ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

---

| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | $2,814,430.80 |
|---|---|---|

| **Part 2:** | **List Others to Be Notified for a Debt Already Listed in Part 1** |
|---|---|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

# EXHIBIT E